UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER M. MOSSBURG,

Plaintiff,

v.

HOME DEPOT, U.S.A., Inc.,

Defendant.

Case No.:  3:25-cv-00739-JAH-JLB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**[ECF No. 5]**

Pending before the Court is Defendant Home Depot, U.S.A., Inc.'s ("Defendant") Motion to Dismiss.  ECF No. 5 ("Motion" or "Mot.").  Plaintiff Christopher Mossburg, proceeding *pro se*, opposed the Motion ("Opposition" or "Opp'n") and Defendant replied ("Reply").  ECF Nos. 17, 18.  After a thorough review of the record, and for the reasons described below, the Court **GRANTS** the Motion.

## BACKGROUND

On January 15, 2025, Plaintiff, an individual, filed a second lawsuit[1] against Defendant, a home improvement company, in California state court alleging that Defendant violated California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq*. ("Unruh Act"),

---

[1] Plaintiff's first suit, which alleged both Americans with Disabilities Act ("ADA") and Unruh Act claims, was dismissed by the Court without prejudice for lack of Article III standing.  *See Mossburg v. Home Depot, U.S.A., Inc.*, 3:24-cv-00266-JAH-JLB, Dkt. No. 22.

1

by failing to provide disability accommodations to Plaintiff throughout 2023. *See* Notice of Removal, Ex. A (ECF No. 1-2, "Complaint" or "Compl."). On March 28, 2025, Defendant removed this civil action to district court pursuant to 28 U.S.C. § 1441, which permits defendants to establish federal jurisdiction based on either a federal question or diversity. ECF No. 1. On April 4, 2025, Defendant filed this Motion. ECF No. 5. On April 16, 2025, Plaintiff moved to remand the action to state court, which Defendant opposed. ECF Nos. 8, 12. The Court denied the motion to remand, finding that while there was no federal question jurisdiction, diversity jurisdiction existed under 28 U.S.C. § 1332. ECF No. 15.

Plaintiff alleges that he is an individual who suffers from moderate to severe learning disabilities that impact his ability to read and communicate with others. Compl. at 5. Plaintiff alleges several examples in 2023[2] of Defendant not providing his requested disability accommodations. *See id.* Specifically, Plaintiff alleges that he requested to "be provided effective communication by reason of disability [and] instruction in regard to where and how to file an accommodation request with Defendant's business." *Id.* at 10.

Between January and May 2023, Plaintiff communicated with Defendant's attorney, Gregory Hurley ("Hurley") of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin"), regarding Plaintiff's accommodation requests. *See id.* at 14-20. Plaintiff and Hurley emailed back and forth several times, with Hurley frequently asking Plaintiff for his specific accommodation requests, and Plaintiff responding that Hurley should refer to communications from 2018. *Id.* Between May and June 2023, Plaintiff also contacted Sheppard Mullin multiple times through email and phone requesting confirmation of his accommodation requests. *See id.* at 20-26. Lastly, Plaintiff alleges that on October 10, 2023, he visited one of Defendant's stores and asked an employee for assistance with

---

[2] Throughout his Complaint, Plaintiff makes several allegations of Defendant refusing his requested accommodations in 2018. *See* Compl. Plaintiff acknowledges that all 2018 allegations are time-barred and offered solely to provide context. Opp'n at 17. As such, the Court does not incorporate any of Plaintiff's 2018 allegations into its analysis regarding the Motion.

3:25-cv-00739-JAH-JLB

finding a specific product. *Id.* at 26. The employee was unable to confirm the product was in stock and suggested that Plaintiff search Defendant's website to locate the product and the stores that stocked the product. *Id.* Plaintiff alleges he was unable to purchase the product due to the website malfunctioning. *Id.* at 27.

Based on the 2023 events described, Plaintiff alleges 21 violations of the Unruh Act committed by Defendant. *See id.* Defendant moves to dismiss under Federal Rules of Civil Procedure ("FRCP") 12(b)(1), 12(b)(6), and 41(b). *See* Motion.

## DISCUSSION

### I. California Unruh Civil Rights Act

The Unruh Act "was designed to create and preserve a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination." *Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1064 (9th Cir. 2025) (internal quotation marks and citation omitted). The Unruh Act "operates virtually identically to the ADA." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). This entitles all people in California, irrespective of "disability [or] medical condition, . . . full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." *Id.* (quoting Cal. Civ. Code § 51(b)). Unlike the ADA, which only offers injunctive relief, the Unruh Act "allow[s] for monetary damages." *Id.* A plaintiff "may obtain actual damages . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." *Id.* (quoting Cal. Civ. Code § 52(a)).

A plaintiff must have standing[3] to assert a statutory violation, and standing under the Unruh Act is broad. *Gilbert*, 157 F.4th at 1064 (citation omitted). "A plaintiff suffers injury—and therefore has standing—under the Unruh Act if he is 'the victim of [a] defendant's discriminatory act.'" *Id.* (quoting *Angelucci v. Century Supper Club*, 41 Cal.

---

[3] In this context, standing refers to statutory standing under California law and "should not be confused with constitutional standing under Article III." *Gilbert*, 157 F.4th at 1064 n.4 (citation omitted).

4th 160, 175 (2007)).  A discriminatory act under Unruh occurs when a plaintiff "presents himself [] to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him [] from using those services."  *White v. Square, Inc.*, 7 Cal. 5th 1019, 1023 (2019).

There are two types of Unruh Act violations.  First, "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act."  *Molski*, 481 F.3d at 731 (citing Cal. Civ. Code § 51(f)).  A plaintiff need not prove intentional discrimination when the Unruh Act violation is premised on an ADA violation.  *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004) (citation omitted); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670 (2009).  However, a plaintiff not invoking the ADA as an Unruh Act violation "must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (citing *Munson*, 46 Cal. 4th 661).  To establish intentional discrimination, "the Unruh Act contemplates willful, affirmative misconduct on the part of those who violate the Act . . . ."  *Id.* (internal quotation marks and citations omitted).  Further, a plaintiff must allege "more than the disparate impact of a facially neutral policy."  *Id.* (citations omitted).

## II.    Motion to Dismiss

Defendant argues that Plaintiff's Complaint should be dismissed under FRCP Rule 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or under Rule 41(b) for failure to comply with a court order.  Mot. at 13-28.

### A. FRCP Rule 12(b)(1)

Federal courts are of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Jurisdiction must "be established as a threshold matter" before reaching the merits of any dispute.  *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94-95 (1998).  FRCP 12(b)(1) allows a party to challenge a pleading for lack of subject matter jurisdiction.

3:25-cv-00739-JAH-JLB

The Court's prior order denying Plaintiff's motion to remand, which followed the filing of this Motion, primarily disposed of Defendant's jurisdictional arguments under Rule 12(b)(1) and found that diversity jurisdiction existed. *See* ECF No. 15. In its Reply following the Court's remand denial, Defendant asserts "Plaintiff fails to establish Article III standing . . . ." Reply at 17. Although a plaintiff must establish Article III standing for ADA violations, the statutory standing requirement under California's Unruh Act is different. *See Gilbert*, 157 F.4th at 1064 n.4 (citation omitted). Therefore, Plaintiff does not need to establish Article III standing, and for the reasons given in the Court's order denying remand, the Court has subject matter jurisdiction under Rule 12(b)(1). *See* ECF No. 15.

**B. FRCP Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Although the factual allegations must be more than speculative, a well-pleaded complaint may proceed even if the likelihood of recovery is remote. *Twombly*, 550 U.S. at 555-56.

When ruling on a 12(b)(6) motion, courts must accept as true the facts alleged in the complaint and draw all inferences in the light most favorable to the non-moving party. *See Iqbal*, 556 U.S. at 678; *see also Moss*, 572 F.3d at 969. However, courts need not accept as true legal conclusions cast as factual allegations. *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

The pleadings of a *pro se* plaintiff "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks and citation omitted). Although the pleadings are still evaluated under *Iqbal* and *Twombly*, courts are obligated, "particularly in civil rights cases, to construe the pleadings liberally and to afford the [*pro se*] petitioner the benefit of any doubt." *Id.* (internal quotation marks and citation omitted).

Here, as an initial matter, the parties disagree as to whether federal pleading standards apply in this diversity action. *See* Opp'n at 6, 12-13 (Plaintiff argues that California's notice pleading standard applies); *see also* Reply at 8 (Defendant argues that the FRCP apply). Defendant is correct in that "[i]t is well-settled law that the Federal Rules of Civil Procedure govern the sufficiency of pleadings in federal actions, even those based on diversity jurisdiction." Reply at 8; *see also Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012) (discussing pleading requirements in a diversity action using FRCP Rule 8(a)(1), *Twombly* and *Iqbal* standards); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 961 (N.D. Cal. Nov. 30, 2020) ("A federal court sitting in diversity . . . must apply state substantive law and federal law governing procedure.") (*citing Hanna v. Plumer*, 380 U.S. 460, 473 (1965)). Therefore, the Court uses FRCP pleading standards to determine the sufficiency of Plaintiff's Complaint.

Turning to the merits, Defendant first argues that Plaintiff fails to state claim for relief under the ADA. *See* Mot. at 21-25, 27-28. This argument is moot because Plaintiff does not allege ADA violations in his Complaint. *See* Compl.; *see also* ECF No. 15.

Relevant to Plaintiff's current allegations, Defendant argues that "Plaintiff cannot state a viable Unruh Act claim" to survive a 12(b)(6) dismissal. Mot. at 26. Specifically, Defendant asserts that "Plaintiff fails to allege sufficient facts to support an Unruh claim

via [Cal. Civ. Code §§ 51(b) or 51(f)]." Reply at 11. Plaintiff concedes that § 51(f) is irrelevant because Plaintiff does not allege any ADA claims. *See* Opp'n at 10. Thus, the primary question for the Court is whether Plaintiff sufficiently states an Unruh Act claim under § 51(b).

To sufficiently state an Unruh Act claim under § 51(b), Plaintiff must plead intentional discrimination by Defendant based on Plaintiff's disability, denying Plaintiff full and equal accommodations and services at Defendant's business establishments. *Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 425. Further, Plaintiff must plead that Defendant's actions constituted "willful, affirmative misconduct" in violation of the Unruh Act, and "more than the disparate impact of a facially neutral policy." *Id.* (internal quotation marks omitted).

Plaintiff's Complaint alleges 21 Unruh Act violations based on an ongoing series of communications and interactions with Defendant and Defendant's counsel regarding Plaintiff's request for disability accommodations. *See* Compl.; *see also* Opp'n at 17 ("[The Complaint] also alleges Defendant failed to provide effective communication and did not maintain or communicate any accessible policy for requesting accommodations."). For each violation of the Unruh Act alleged in his Complaint, Plaintiff asserts:

> The Defendant must, but failed to provide any reasonable accommodation, effective communication, aid, services, or take those steps necessary to avoid discriminatory conduct that resulted in the Plaintiff's segregation and exclusion from the full and equal enjoyment of the Defendant's services, goods, privileges, advantages, facility [sic], or accommodations in violation of the Unruh Civil Rights Act.

> As a Fortune 500 company, the Defendant was not only capable but fully aware of its legal responsibilities but failed to take the necessary steps to comply with its obligations. This failure is not an accident, but the inevitable outcome of a broader pattern of belligerent refusal to comply with civil rights legislation. This pattern is further highlighted throughout this case as the Defendant, despite these and multiple forthcoming documented requests, failed to communicate any policy or guidance in regard to accommodation requests immediately or eventually, either at its physical locations, by phone or online, as is demonstrated by Exhibits and arguments.

Compl. at 32-43, 45-49, 51-52, 54, 56, 59-60, 63, 65, 67-68.

The dispositive issue with Plaintiff's Complaint is that he fails to allege intentional discrimination, a necessity for stating an Unruh Act claim under § 51(b).  It appears that Plaintiff argues for Defendant's liability based on a disparate impact theory.  *See, e.g., id.* at 32 ("Defendant . . . failed to provide any reasonable accommodation . . . or take those steps necessary to avoid discriminatory conduct . . . ."); *id.* at 34 (Defendant "failed to take the necessary steps to comply with its obligations.  This failure is . . . the inevitable outcome of a broader pattern of belligerent refusal to comply with civil rights legislation.").

Despite reading the Complaint liberally, Plaintiff's factual allegations are insufficient to infer intentional discrimination, largely because Plaintiff admits that Defendant attempted several times to assist Plaintiff in obtaining accommodations.  *See, e.g., id.* at 10 (Defendant's employee "Jorge provided an email to customer care and suggested that accommodation requests be sent there"); *id.* at 13 ("On 2/8/23, Plaintiff received an email from Home Depot stating: 'Hello Chris Mossburg, Please direct any Title III ADA complaints or other correspondence to [Defendant's] registered agent for service of process").  Further, Plaintiff admits that Defendant's counsel asked several times for specifics on Plaintiff's accommodation requests, but Plaintiff refused to elaborate each time. *See, e.g., id.* at 15. ("On 3/15/23, [Hurley] responded: . . . 'Please let me know what your specific accommodation request is.' . . . On 3/16/23, Plaintiff responded to [Hurley's] email directing attention to the fact that several easily identifiable specific requests have already been submitted both in 2018, and now renewed in 2023.").  Perhaps the most glaring admission of Plaintiff's refusal to provide relevant information to Defendant occurred in May 2023 during this exchange with Defendant's counsel:

> On 5/1/23, [Hurley] responded to Plaintiff. [Hurley] proffered the willingness to communicate effectively with Plaintiff and offer aides and services to that end stating: 'I am happy to communicate with you in any medium that works for you. We can do email, phone call, assisted video ASL, etc., just let me know. I need you to let me know the specific accommodation request you are asking for. Is it for a specific store?' . . . On 5/2/23, Plaintiff emailed [Hurley] expressing frustration that specifics are being requested when specifics have

been provided. Plaintiff urged [Hurley] to please read previously emailed accommodation requests.

*Id.* at 18.  Finally, the Complaint lacks allegations of Defendant committing "affirmative, willful misconduct" based on Plaintiff's disability.  *See Compl.*

In sum, Plaintiff does not sufficiently allege intentional discrimination as required by § 51(b) and thus fails to state a claim under either prong of the Unruh Act.  Therefore, Defendant's Motion is **GRANTED** pursuant to FRCP Rule 12(b)(6).

**C. FRCP Rule 41(b)**

In the alternative, Defendant argues that the Court should dismiss Plaintiff's Complaint under FRCP Rule 41(b) for failure to comply with a court order.  Mot. at 13-14. Dismissing a complaint under Rule 41(b) falls within the district court's discretion. *Yourish v. California Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999).  Because the Court dismisses Plaintiff's Complaint under Rule 12(b)(6), the court declines to dismiss under Rule 41(b).

<u>**CONCLUSION**</u>

For the reasons set forth above, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion to Dismiss is **GRANTED**;

(2) The Court **GRANTS** Plaintiff twenty-one (21) days leave, from the filing date of this Order, to file an amended complaint to cure the deficiencies noted.  Plaintiff is cautioned, however, that should he choose to file an amended complaint, it must be complete by itself and comply with the Federal Rules of Civil Procedure.

(3) **IT IS FURTHER ORDERED** that if Plaintiff fails to file an amended complaint within the prescribed period expressed in (2), above, the Court will dismiss the case with prejudice.

**IT IS SO ORDERED.**

3:25-cv-00739-JAH-JLB

Dated:  March 9, 2026

_____
Hon. John A. Houston
United States District Judge

3:25-cv-00739-JAH-JLB